UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GLENN E. GLOVER | ) | CASE NO. 5:17-CV-1369 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| FIBERCORR MILLS, LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is defendant Fibercorr Mills, LLC's motion for summary judgment (Doc. No. 43 ["Mot."]). Plaintiff filed his opposition (Doc. No. 45 ["Opp'n"]) and defendant filed a reply (Doc. No. 46 ["Reply"]). For the reasons discussed herein, defendant's motion for summary judgment is GRANTED.

**I. BACKGROUND**

Plaintiff Glenn E. Glover ("Glover" or "plaintiff") is an employee of Fibercorr Mills, LLC ("Fibercorr" or "defendant"). (Doc. No. 44, Deposition of Glenn Glover ["Glover Dep."] at 485.[1]) On July 6, 2016, Fibercorr's President David Shew ("Shew") received a report from Fibercorr's worker's compensation service company, which denied Glover's worker's compensation coverage for a requested treatment. (*Id.* at 525–28; Doc. No. 43-1, Affidavit of David Shew ["Shew Aff."] at 461.) The report indicated that Glover, "admit[ted] to using heroin from a friend at work

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

1

beginning about 7–8 months ago." (Shew Aff. at 463.) After reviewing the report, Shew approached Glover. (*Id.* at 461; Glover Dep. at 525–28.) The substance of their conversation is in dispute, but it is undisputed that Glover admitted he could not pass a drug test at the time of their conversation. (Glover Dep. at 528–29; Shew Aff. at 462.) Shew sent Glover home from work after their conversation. (Glover Dep. at 528, 530.) Additionally, Shew removed Glover from his position as shipping supervisor and promoted Steve Mellot ("Mellot") to the position. (Shew Aff. at 462; Doc. No. 45-2, Deposition of Steven Mellott ["Mellot Dep."] at 790.)

Glover enrolled in a drug treatment program. (Glover Dep. at 535.) Fibercorr did not terminate Glover's employment, but instead continued to pay him while he was receiving treatment. (Shew Aff. at 462; Glover Dep. at 556–57.) Beginning July 6, 2016, Fibercorr paid Glover at the rate of an entry-level employee. (Shew Aff. at 462; Glover Dep. at 557.)

On or about August 5, 2016, Glover passed a drug test and returned to work at Fibercorr. (Shew Aff. at 462.) When he returned to work on August 5, 2016, Glover reported to the entry-level "scrap man" position. (Glover Dep. at 551–53.) As of the date of his deposition on March 22, 2018, Glover was still employed in the scrap man position at Fibercorr. (*Id.* at 554.) Further, as of the date of his deposition, Glover had continued to participate in a medically assisted drug treatment program. (*Id.* at 537–38.)

On May 17, 2017, the United States Equal Employment Opportunity Commission issued Glover a "Notice of Right to Sue." (*See* Doc. No. 1-1.) On June 28, 2017, Glover filed the instant action in this Court claiming Fibercorr unlawfully discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

Fibercorr filed its motion for summary judgment on October 24, 2018, and it is ripe for determination.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of, or in opposition to, a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, the Court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus,

in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict[.]" *Id*. at 252.

Summary judgment is appropriate whenever the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The nonmoving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The nonmoving party must show "more than a scintilla of evidence" to overcome summary judgment; it is not enough for the nonmoving party to show that there is some "metaphysical doubt" as to material facts. *Id*.

### III.  DISCUSSION

In its motion for summary judgment, Fibercorr argues that Glover's claim of discrimination under the Americans with Disabilities Act ("ADA") must fail because (1) Glover lacks any direct evidence of discrimination; (2) Glover cannot establish the required elements of a prima facie case of discrimination; (3) Fibercorr had a legitimate, nondiscriminatory reason for demoting Glover; and (4) Glover cannot provide any evidence of pretext.

**Americans with Disabilities Act**

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes "limiting, segregating,

4

or classifying" an employee "in a way that adversely affects the opportunities or status" of the employee "because of" the employee's disability. 42 U.S.C. § 12112(b)(1).

An employee claiming that his employer treated him less favorably than others because of the employee's disability status has a cognizable disparate-treatment claim under the ADA. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53, 124 S. Ct. 513, 157 L. Ed. 2d 357 (2003). In a disparate-treatment ADA discrimination claim, the question is whether the employer treats some employees less favorably than others because of their ADA-recognized disability. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977); *Raytheon Co.*, 540 U.S. at 52 ("Liability in a disparate-treatment case 'depends on whether the protected trait . . . actually motivated the employer's decision.'" (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993))).

A plaintiff can prove disparate-treatment discrimination under the ADA through either direct or indirect evidence of discrimination. "Distinguishing between cases that involve direct evidence of discrimination and those in which the plaintiff is not able to introduce direct evidence is vital because the framework for analyzing the two kinds of cases differs." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1184 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

**<u>Direct Evidence of Discrimination</u>**

If a plaintiff-employee has direct evidence that he suffered an adverse employment action because of his disability, then the employee will succeed on his ADA discrimination claim if the employee also proves: (1) that the employee is disabled; but (2) that the employee is otherwise qualified to perform the essential functions of the position, (a) without accommodation from the employer, (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed

reasonable accommodation. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 892 (6th Cir. 2016) (citing *Monette*, 90 F.3d at 1186). "Once the plaintiff has established these elements, the employer 'bear[s] the burden of proving that a challenged job criterion is essential . . . or that a proposed accommodation will impose an undue hardship upon the employer.'" *Ferrari*, 826 F.3d at 891 (alteration in the original) (quoting *Monette*, 90 F.3d at 1186).

An employee presents direct evidence of discrimination when, as the name suggests, the employee can point to evidence of the employer indicating that it made an employment-related decision because of the employee's disability. *See Ferrari*, 826 F.3d at 892 (finding direct evidence where employer indicated that it based an adverse employment-related decision on plaintiff's opioid use). Direct evidence requires no inference to conclude that the employer discriminated against the employee. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868–69 (6th Cir. 2007). For this reason, direct evidence usually involves some comment or statement by the employer, written or spoken, showing explicitly that the employer discriminated because of the employee's disability. *See Ross v. Campbell Soup Co.*, 237 F.3d 701, 706–07 (6th Cir. 2001) (finding memorandum that identified employee as "problem person" and "back case" was direct evidence of discrimination).

Here, Glover contends that he has provided direct evidence of discrimination because (1) he has been in the scrap man position since returning to work in August 2016, and (2) because Fibercorr has treated other employees with drug- or alcohol-related issues differently.

Contrary to his contentions, Glover does not present *any* direct evidence of discrimination. Glover's contentions alone are not direct evidence of discrimination. As explained, direct evidence requires no inference to conclude that the employer discriminated against the employee and direct

evidence usually takes the form of an employer's statement indicating explicitly that it made its employment-related decision because of the employee's disability.

Glover does not provide any statements by anyone at Fibercorr indicating that they treated Glover differently than other employees because of a disability. Nor does he provide any statements made by anyone at Fibercorr remarking that Glover remained in the scrap man position because of a disability. Glover's bare contentions, requiring inferences, are insufficient to establish direct evidence of discrimination.

For these reasons, Glover cannot mount his discrimination claim on direct evidence and the Court will instead consider whether he has provided sufficient indirect evidence of discrimination to survive summary judgment.

**<u>Indirect Evidence of Discrimination</u>**

To establish a claim for discrimination under the ADA through indirect evidence, a plaintiff must first establish a prima facie case of discrimination. After a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant can provide a legitimate, nondiscriminatory reason, then the burden shifts back to the plaintiff to show the proffered reason was pretextual.

1. **Plaintiff's Prima Facie Case of Discrimination**

An employee establishes a prima facie case of discrimination under the ADA by showing that: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of the employer's disability; and (5) the position remained open while the employer sought other applicants, or the disabled individual was replaced. *Whitfield v. Tennessee*, 639 F.3d

253, 258–59 (6th Cir. 2011) (citing *Monette*, 90 F.3d at 1186 as setting the proper standard for proving a prima facie case of discrimination under the ADA in the Sixth Circuit).[2]

**Disabled**

Under the ADA, the term "disability" has three meanings: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). The Court will address each in turn, as it pertains to Glover.

### A. Physical or Mental Impairment

Glover contends he is disabled under the ADA because he has a physical or mental impairment that substantially limits one or more major life activities. Major life activities are "those activities that are of central importance to daily life." *Gardull v. Perstorp Polyols, Inc.*, 382 F. Supp. 2d 960, 964 (N.D. Ohio 2005) (quoting *Toyota Motor Mfg., v. Williams*, 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002)). Major life activities include, but are not limited to, '[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking,

---

[2] In its motion for summary judgment, defendant cites to a three-element test for proving a prima facie case of discrimination under the ADA. This standard is incorrect. As the Sixth Circuit made clear in *Whitfield*:

> There has been some confusion in this circuit as to the proper test for establishing a *prima facie* case of employment discrimination under the ADA. . . . [The] three-element test ("*Mahon* formulation") for a *prima facie* case is clearly inconsistent with the five-element test . . . ("*Monette* formulation"). *Monette* states the proper test.

*Whitfield*, 639 F.3d at 259; *see also Ferrari*, 826 F.3d at 894 ("In *Monette*, we unequivocally held that the above five-element test is the proper test for establishing a *prima facie* case under the indirect method.")
    Moreover, in its motion for summary judgment, defendant indicates that, "decisions in the Sixth Circuit have required a plaintiff to show a fourth element . . . . that he or she was replaced by a nondisabled person." (Mot. at 452 (citing *Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 (6th Cir. 2000)). The Court acknowledges that some Sixth Circuit cases, albeit cases that follow the incorrect three-element test, include this "nondisabled replacement" factor. *Martin*, 209 F.3d at 934; *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 310 (6th Cir. 2000). However, the Sixth Circuit has made it clear that *Monette* is the proper standard and *Monette* does not include this factor. Therefore, this Court's analysis will not consider whether Glover was replaced by a nondisabled person.

8

communicating, interacting with others, and working.'" *Ferrari*, 826 F.3d at 893 (quoting 29 C.F.R. § 1630.2(i)). "Substantially limits" means the employee must demonstrate that he is either unable to perform the activity or "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997) (citing 29 C.F.R. § 1630.2(j)(1)).

"In deciding whether an individual is substantially limited in a major life activity, courts should consider the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or expected permanent or long term impact, of the impairment." *Penny*, 128 F.3d at 414. For an employee to establish he is substantially limited in is ability "to work," the employee must show that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Verhoff v. Time Warner Cable, Inc.*, 478 F. Supp. 2d 933, 938 (N.D. Ohio 2006) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999), *overturned on other grounds by* Pub. L. 110-325 (2009)).

Here, Glover has failed to present any evidence showing that his drug addiction substantially limited a major life activity. Glover testified at his own deposition that his drug abuse problem did not interfere with his daily life in any way. (Glover Dep. at 599–603 (stating his

addiction has only affected his life "at work," "as far as my pay goes," and "standard of living," but nothing else).)

Still, Glover contends that his drug addiction substantially affected his ability to work. (Opp'n at 737.) While Glover's drug addiction caused him to miss a few weeks of work while participating in a treatment program, he has failed to provide any evidence that his ability to perform a class or broad range of jobs was significantly restricted. *Verhoff*, 478 F. Supp. 2d at 938. For these reasons, Glover has failed to establish any genuine issue as to whether he has a mental or physical impairment that substantially limits one or more life activities.

### B. Record of Impairment

Glover contends he is disabled for purposes of the ADA because there was "a record of [his] impairment." (Opp'n at 736.) "An individual will be considered to have a record of a disability if the individual has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(2). "Courts that have analyzed [the record-of-impairment] prong have held that it includes people who have recovered from previously disabling conditions . . . but who may remain vulnerable to the fears and stereotypes of their employers." *Fortkamp v. City of Celina*, 159 F. Supp. 3d 813, 822 (N.D Ohio 2016) (alteration in original) (quotation marks omitted) (quoting *Neely v. Benchmark Family Servs.*, No. 3:13-cv-415, 2015 WL 1809369, *8 (S.D. Ohio Apr. 21, 2015)). Thus, to establish disability through a record of impairment, plaintiff must show that at some point in the past he had a substantially limiting impairment. *Knight v. Metro. Gov't*, 136 F. App'x 755, 760 (6th Cir. 2005).

Here, Glover contends that there is a "record" of his impairment because Fibercorr received the medical record stating that [Glover] admits to using [h]eroin[.]" (Opp'n at 736 (citing Shew

Aff. at 461).) But as discussed above, Glover cannot establish any genuine issue as to whether he suffered from any substantially limiting impairment. The alleged impairment mentioned in the record that Fibercorr received was Glover's addiction to heroin. As discussed, Glover has failed to provide any evidence that shows his heroin addiction substantially affected any major life activity, as required by the ADA. For these reasons, Glover has not established any genuine issue as to whether he is disabled under the ADA because there was record of an impairment.

### C. Regarded as Having an Impairment

Nevertheless, Glover contends he should be considered disabled under the ADA because he was "regarded as having [an] impairment." (Opp'n at 736.) An employee is regarded as having an impairment if, "he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3). There are three ways in which an employee can establish that he is regarded as having an impairment: (1) when the employee has an impairment that is not substantially limiting but it is treated as substantially limiting; (2) when the impairment is limiting only because of others' attitudes; or (3) when the employee has no impairment at all but is viewed as having a substantially limiting impairment by the employer. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 938 (6th Cir. 2000).

It is well established that an employee "cannot show that [his employer regarded him as disabled] . . . merely by pointing to that portion of the record in which his supervisor admitted that he was aware of [plaintiff's] medical restrictions and modified [plaintiff's] responsibilities based

on them." *Huge v. Gen. Motor Corp.*, 62 F. App'x 77, 80–81 (6th Cir. 2003) (alterations in original) (quotation marks omitted) (quoting *Plant*, 212 F.3d at 938).

Here, Glover contends that Fibercorr regarded him as having a disability related to his drug use because it required a drug test before he could return to work. (Opp'n at 736.) The drug test is the only evidence that Glover provides to support his contention that he was regarded as having an impairment. (*Id.* ("This act alone by [Fibercorr] demonstrates that [Glover] was regarded as having the impairment.").) However, employers are well within their rights to make drug tests a condition of employment, or return to employment, without violating the ADA. 42 U.S.C. § 12114; *Muhammed v. City of Philadelphia*, 186 F. App'x 277, 279 (3d Cir. 2006). And requiring an employee to undergo a test or evaluation to ensure he is not suffering from an impairment does not amount to regarding the employee as disabled. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810–811 (6th Cir. 1999) (finding that employer did not regard employee as disabled when only evidence employee presented was that employer made them undergo a mental and physical examination); *Krueger v. Home Depot USA, Inc.*, 674 F. App'x 490, 494 (6th Cir. 2017) (finding that employee did not plead sufficient facts to support claim that employer regarded him as disabled when the only offered evidence was that employer placed employee on leave and required employee to undergo psychological examination). Further, to the extent that the drug test shows Fibercorr was aware of Glover's prior drug use, pointing to the place in the record where an

employer admits knowledge of employee's alleged impairment does not amount to regarding the employee as disabled. *Huge*, 62 F. App'x at 80–81; *Plant*, 212 F.3d at 938.

Glover fails to provide any other evidence that Fibercorr regarded him as having an impairment. For these reasons, Glover has failed to establish any genuine issue as to whether Fibercorr regarded him as disabled.

Thus, Glover has failed to provide evidence creating a genuine issue that he is disabled as defined by the ADA. Therefore, he cannot prove a prima facie case of discrimination under the ADA. For this reason alone, summary judgment is proper in Fibercorr's favor, as a matter of law.

Furthermore, even if Glover could establish a prima facie case of discrimination under the ADA, his claim would still fail because Fibercorr had a legitimate, nondiscriminatory reason for the employment action and because Glover cannot establish that Fibercorr's proffered reason was merely a pretext for discrimination.

**2. Defendant's Legitimate, Nondiscriminatory Reason for Employment Action**

After a plaintiff-employee establishes a prima facie case of discrimination, the burden shifts to the defendant-employer to provide a legitimate, nondiscriminatory reason for the employment action. The employer's burden to provide a legitimate, nondiscriminatory reason for the employment action is a burden of production—not persuasion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). The employer's proffer involves no credibility assessment. *Id.*

Here, Fibercorr contends that it had a legitimate, nondiscriminatory reason for removing Glover from the supervisor position on July 6, 2016, because Glover admitted he could not pass a drug test, and it believed Glover was using illegal drugs while at work. (Mot. at 458.) Fibercorr contends that July 6, 2016, is the only adverse employment action at issue because that is the date

13

on which Fibercorr sent Glover home, removed him from the supervisor position, appointed Steve Mellot to fill Glover's position, and began paying Glover the scrap man rate. (Stew Aff. at 462.)

Contrarily, Glover contends that he was not aware of his demotion until he returned on August 5, 2016, and, thus, that is the first date of the adverse employment action. (Opp'n at 745.) Glover contends further that the adverse employment action has been continuous since August 5, 2016, because he has yet to be returned to the supervisor position. (Opp'n at 745–46.) He contends that Fibercorr has not provided any legitimate reason for not retuning him to the supervisor position after his return. (*Id.* at 746.)

Although Glover contends he was not *aware* of his demotion until August 5, 2016, he does not present any evidence to contradict Fibercorr's assertion that it asked Mellot to replace Glover on July 6, 2016. (Stew Aff. at 462.) Further, it is undisputed that Glover was sent home from work on July 6, 2016. (Stew Aff. at 462; Glover Dep. at 528, 530, 552.) It is also undisputed that Glover was aware Fibercorr began paying him at the rate of a scrap man—the position to which he would return—on July 6, 2016. (Shew Aff. at 462; Glover Dep. at 557.) And, it is undisputed that when Glover returned his previous position was not open, as it had been filled by Mellott. (Shew Aff. at 462; Glover Dep. at 553, 588–89.) Therefore, the Court finds July 6, 2016, as the date on which Glover was removed from his supervisor position.

Glover has failed to provide evidence of any adverse employment action, besides the demotion. As such, Glover has not provided any evidence of continuous adverse employment actions commencing on, or after, August 5, 2016. He claims in his opposition to defendant's motion for summary judgment that he has "asked for other positions and continues to be

overlooked and denied." (Opp'n at 746.) However, this statement is contrary to his deposition testimony.

When asked if he has "made any efforts to get into any other positions," Glover responded that he did by telling at least two foremen that he could "run [the] winder" (a step-up from the scrap man position). (Glover Dep. at 554–56.) He claims in reply the foremen just shrugged and said, "we know you can, Glenn." (*Id.* at 554–57.) He then reveals, he *was* able to work the winder. (*Id.* at 556.) But when asked if he has "made any other efforts to get into any other position," Glover replied, "[n]o." (*Id.*)

Glover does not provide any evidence that he was affirmatively turned down for any open position for which he applied. He says he asked for his old supervisor position when he returned on August 5, 2016, (Glover Dep. at 588–89), but he does not provide any evidence as to whether the position was open.[3] Further, he admits he has not asked for the supervisor position since August 5, 2016. (*Id.* at 589).

For these reasons, the Court finds that the only adverse employment action at issue occurred on July 6, 2016, when Glover was sent home, removed from his supervisor position, and began receiving the salary of an entry level employee. As such, Fibercorr's proffered reason—that Glover was using illegal drugs while at work—is a sufficient legitimate, nondiscriminatory reason for the action. For this reason, Fibercorr has met its burden of production.

**3. Defendant's Reason Merely Pretextual**

After the defendant-employer provides a legitimate, nondiscriminatory reason for the employment action, the burden shifts back to the plaintiff-employee to show the proffered reason

---

[3] Contrarily, Glover suggests that the position was not open because Glover acknowledges that Mellot held the position when he returned. (Glover Dep. at 553, 588–89.)

was merely pretextual. Because the burden shifts back to the employee, and because the employee bears the ultimate burden of persuasion at trial, the employee must be able to provide *some* evidence that creates a genuine issue of material fact as to whether the employer's provided reason was pretextual.

> To survive a motion for summary judgment, the plaintiff need not *prove* that the defendant's proffered rationale is pretextual, as that would be enough proof for summary judgment in favor of the plaintiff. Rather, the plaintiff must prove only enough to create a *genuine issue* as to whether the rationale is pretextual.

*Whitfield*, 639 F.3d at 260.

An employee must establish a genuine issue of pretext under the "but for" causation standard. That is, but for the employee's disability, he would not have suffered the adverse employment action. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012); *Notarnicola v. Johnson Controls Inc.*, No. 12-11331, 2014 WL 1304591, at *6–7 (E.D. Mich. Mar. 28, 2014) (citing *Lewis*). An employee can show pretext if: (1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate the employer's action, or (3) the proffered reasons were insufficient to motivate the employer's action. *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).

Further, the Sixth Circuit has employed the "honest belief" rule with regard to pretext. Under the honest belief rule, if the employer honestly believed the reason it gave for its employment action, then an employee cannot establish pretext, even if the employer's reason is ultimately found to be mistaken. *Ferrari*, 826 F.3d at 895. "[T]he focus of a discrimination suit is on the intent of the employer," so "[i]f the employer honestly, albeit mistakenly, believes in the non-discriminatory reason it relied upon in making its employment decision, then the employer

arguably lacks the necessary discriminatory intent." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).

Fibercorr claims that it removed Glover from the supervisor position because it believed he was taking illegal drugs at work. (Mot. at 458.) To support its belief as reasonable, Fibercorr cites to the undisputed fact that Glover admitted he could not pass a drug test on the day on which Fibercorr sent him home and removed him from the supervisor position. (Glover Dep. at 528–29; Shew Aff. at 462.)

Fibercorr also claims its belief was reasonable because Glover admitted to using illegal drugs while at work. (Mot. at 458.) Glover denies ever saying he used illegal drugs at work and further claims he never used illegal drugs at work. (Glover Dep. at 507, 523, 528–29.) For the purposes of Fibercorr providing a legitimate, nondiscriminatory reason for removing Glover from the supervisor position, the truth is irrelevant. What matters is whether Fibercorr honestly believed its reason was the truth. *See Ferrari*, 826 F.3d at 895. Fibercorr shows it honestly believed Glover admitted to using drugs at work because, according to Stew, on July 6, 2016, while at work, " [Stew] asked [Glover] if he was using illegal drugs at work, and he stated that he was using illegal drugs at work." (Stew Aff. at 462.) As a part of that same conversation, Glover was asked to take a drug test and "he stated there was no use in taking one because he knew he would not pass. (*Id.*)

To combat Fibercorr's proffered reason, Glover does not challenge whether Fibercorr honestly believed its proffered reason. Instead, Glover contends that "[w]ith an impeccable record, there is no reason [p]laintiff has been held hostage in an entry level period [sic] with his experience but for [d]efendant's discriminating against him." (Opp'n at 746.) Glover does not provide *any* reason as to why Fibercorr's decision to remove him from the supervisor position was pretextual. As discussed previously, this Court has determined that the adverse employment action at issue

occurred on July 6, 2016, and it is not continuing. Because Fibercorr has provided a reasonable, legitimate, nondiscriminatory reason for its July 6, 2016 decision, and because Glover has failed to provide any reason as to why Fibercorr's proffered reason is pretextual, Glover has failed to meet his burden of persuasion.

IV. **CONCLUSION**

For the reasons set forth herein, defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED**.

Dated: December 28, 2018

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**